UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
SHIRLEY A. ZURI MCKIE,

                    Plaintiff,

              - against -

LAGUARDIA COMMUNITY COLLEGE,

                    Defendant.
----------------------------------------------------X

**MEMORANDUM & ORDER**

04-CV-5555 (RRM)(MDG)

MAUSKOPF, United States District Judge.

In July 2003, Plaintiff Shirley A. Zuri McKie, an African-American college administrator, was terminated from her employment with Defendant LaGuardia Community College ("LaGuardia"). McKie now brings a single federal civil rights claim for racial discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981"), together with supplemental state law claims for race and age-based discrimination under the New York State Human Rights Law, Executive Law §§ 290 et seq., and the New York City Human Rights Law, Administrative Code §§ 8-101 et seq. LaGuardia moves for summary judgment on all claims. For the reasons that follow: (a) summary judgment is GRANTED as to the Section 1981 claims; and (b) the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## FACTUAL BACKGROUND

In September 1995, McKie, assumed a fulltime, tenure-track position as director of LaGuardia's Theatre Department.[1] Pursuant to the terms of LaGuardia's Collective Bargaining Agreement (the "CBA"), that position was subject to reappointment. In accordance with the

---

[1] Prior to assuming her tenure-track position, LaGuardia first hired McKie in or about late-1992, as an outside fundraising consultant.

CBA, McKie was reappointed to successive one-year terms beginning July 1996, 1997, and 1998, and then a two-year term for 1999 through 2001.

In August 2001, LaGuardia underwent a change of administration, as Dr. Gail Mellow was named president of LaGuardia. Due to this change, McKie's reappointment for the 2001 through 2003 term, her final renewable term prior to an award of tenured status, was delayed. Mellow ultimately did recommend McKie for reappointment on August 14, 2001. In January 2002, McKie expressed her desire to leave the Theatre Department to focus on fundraising generally for LaGuardia, an area in which she had substantial prior work experience. Mellow granted that request, effective July 1, 2002. On McKie's recommendation, her former duties in the Theatre Department were assumed by her younger, non-black subordinate, Barbara Carson, although the parties disagree as to whether Carson was to undertake those duties permanently or on an interim basis. McKie's reassignment to her fundraising role ultimately led to her separation from LaGuardia, and is the source of much of the present dispute.

LaGuardia argues that McKie's performance in the fundraising role was unsatisfactory. Specifically, LaGuardia alleges that McKie failed to work effectively with its then-fundraising consultant, Jose Orengo, a younger, Hispanic man, to improve LaGuardia's fundraising efforts. Based in part on that assessment, Mellow, per LaGuardia policy, recommended that the City University of New York Board of Trustees – the governing body responsible for rendering employment decisions with respect to LaGuardia faculty – not renew McKie's fundraising employment, thereby denying her tenured status and effectively ending her LaGuardia career. Mellow's negative recommendation is predicated ostensibly upon two adverse performance evaluations for McKie, each drafted by McKie's alleged superior, Dr. Audrey Harrigan.

McKie denies that her termination was performance-based and claims that the grounds for her termination were pretextual. In support, McKie cites numerous examples of alleged irregularities in the evaluation process, including: (1) failing to evaluate her on an annual basis as contractually required; (2) back-dating "belated" evaluations to appear in compliance with CBA provisions; and (3) placing those evaluations in her file only after Mellow's decision to recommend against McKie's reappointment.

Apart from procedural irregularities in LaGuardia's evaluation process, McKie contends that the events surrounding her actual termination evidence discrimination. McKie complains that LaGuardia placed her between the proverbial "rock and hard place," deliberately passing her over for a fulltime fundraising position, while choreographing circumstances to deny her an opportunity to return to her previous position with the Theatre Department.

With respect to the fundraising role, it is uncontested that Mellow appointed Orengo – rather than McKie – to a fulltime, tenure-track fundraising position in February 2003. McKie claims that despite her stated desire for such a position and her superior qualifications, it was granted to Orengo without an open search process and despite a University-wide hiring freeze. On that basis, McKie alleges that Mellow effected a preconceived plan to discriminatorily deny her a fulltime fundraising position in favor of a younger, non-black candidate.

Similarly, McKie claims that when she was denied further fundraising employment, she was inexplicably barred from resuming her Theatre Department duties on the theory that she had surrendered her Theatre Department position in assuming the fundraising role, a claim McKie denies. That she was not permitted to return to the Theatre Department is, in McKie's view, further evidence that LaGuardia deliberately manipulated the circumstances to force her removal.

3

McKie further alleges that her Theatre Department duties were permanently assumed by an allegedly under-qualified candidate, Barbara Carson, McKie's younger, non-black subordinate.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate only where there exists no genuine issue of material fact, and the onus to establish the absence of such factual issues falls squarely upon LaGuardia as the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon such showing, the onus shifts to McKie to present evidence sufficient to satisfy every element of the claim. In so doing, McKie is required to go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." Id. at 324. In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in McKie's favor. Anderson v. Liberty Lobby, Inc., 47 U.S. 242, 249-50 (1986).[2]

### Section 1981 Liability

Neither McKie's Complaint, nor her submissions on summary judgment are sufficient to support a claim for Section 1981 liability against LaGuardia. Section 1981 provides, in pertinent part, that "all persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). "This section this outlaws discrimination with respect to the enjoyment of benefits, privileges, terms,

---

[2] To the extent that a LaGuardia's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is based entirely on McKie's Complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted], accord Katz v. Molic, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."); see also Jackson v. Onondaga County, 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008).

and conditions of a contractual relationship, such as employment...." Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); see, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000). To establish a Section 1981 claim, plaintiff must show: "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendants; and (3) that the discrimination concerned one or more of the activities enumerated in Section 1981." Lautere v. Int'l Bus. Mach. Corp., 216 F.3d 258, 261 (2d Cir. 2000).

However, because Section 1981 does not and cannot, within constitutional bounds, impose vicarious liability on municipalities; as such, Section 1981 liability against such entities can be asserted only pursuant to 42 U.S.C. § 1983 ("Section 1983"), and even then only in accordance with the well-established requirements promulgated in Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 694 (1978). See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); McCoy v. City of New York, 131 F. Supp. 2d 363, 377-78 (2001) (citing Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 653-56 (1994) (dismissing Section 1981 claim for failure to assert Section 1983 claim, holding: "... [T]o assert a Section 1981 claim against municipal entities ... plaintiff must allege a violation of Section 1983 and meet the requirements of Monell.")). Thus, where, as here, the defendant sued is a municipality or municipal agency,[3] plaintiff must also show that the claimed violations of his or her constitutional rights occurred as a result of a municipal policy or custom. Patterson, 375 F.3d at 226.

Under Monell, an actionable municipal policy exists where "(1) the [c]ity has promulgated a formal rule advocating or supporting the contested conduct, or (2) a single act is

---

[3] As a community college that is part of the City University of New York system, LaGuardia is a municipal entity subject to liability under 42 U.S.C. § 1983. See Clissuras v. City Univ. of New York, 359 F.3d 79, 81-82 (2d Cir. 2004) (citing Pikulin v. City Univ. of New York, 176 F.3d 598, 600 (2d Cir. 1991); Hester-Bey v. New York City Tech. Coll., No. 98-CV-5129, 2000 WL 488484, at *2 (E.D.N.Y. March 22, 2000).

5

taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken." Edwards v. City of New York, 03 Civ. 9407(PAC), 2005 WL 3466009, at *10 (S.D.N.Y. Dec. 19, 2005) (internal quotations omitted). An actionable custom exists where the applicable practice is "so widespread as to have the force of law." Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (citing Monell, 436 U.S. at 690-91). Such a custom need not have formal approval, but plaintiff must demonstrate that it is a continuing practice. See Davis v. City of New York, 228 F. Supp. 2d 327, 337 (S.D.N.Y. 2007) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

Here, although McKie's Complaint asserts the elements of a Section 1981 claim, it indisputably fails to assert an express cause of action under Section 1983. That failure alone warrants dismissal of her Section 1981 claim. McCoy, 131 F. Supp. 2d at 378. However, even if municipal liability for Section 1981 were not dependent upon the express assertion of a Section 1983 cause of action, McKie must necessarily show that the conduct complained of was pursuant to an official municipal policy or practice as set forth in Monell or undertaken by a municipal employee with final policymaking authority. See, e.g., Birmingham v. Ogden, 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999). As discussed below, Plaintiff has not established, and cannot establish, municipal liability against LaGuardia under either theory.

As an initial matter, nowhere in McKie's Complaint does she allege that LaGuardia maintained a custom, policy or practice of discriminating against individuals on the basis of race, and nowhere does she describe LaGuardia's actions in terms sufficient to maintain a Monell claim – a fact which by itself permits summary dismissal. See Birmingham, 70 F. Supp. at 373. Even considering Plaintiff's Monell arguments, raised for the first time in her opposition to summary judgment, this Court finds that, viewing all of the facts in the light most favorable to

McKie, she fails to allege any evidence to permit a reasonable jury to conclude that she was terminated pursuant to a municipal policy, practice or custom as required under Monell. See Miller v. New York City Health & Hosp. Corp., 00 Civ. 140(PKC), 2005 WL 2022016, at *4 (S.D.N.Y. Aug. 22, 2005) (granting summary judgment on Section 1981 claim because plaintiff provided no evidence of municipal policy or custom); Hawkins v. City of New York, 99 Civ. 11704(RWS), 2005 WL 1861855, at *17 (S.D.N.Y. Aug. 4, 2005) (same); Richards v. Calvet, 99 Civ. 12172(RJH), 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (same).

Indeed, McKie's only basis to assert Monell liability is her conclusory argument that Dr. Mellow is a policy maker, and, as such, her employment decisions necessarily rise to the level of municipal policy. While the act of a policy maker may, indeed, confer municipal liability under the appropriate circumstances (see, Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)), the undisputed facts of this case establish that Dr. Mellow does not have final decision-making authority with respect to hiring or termination practices, procedures or decisions at LaGuardia or in the City University of New York system. While those procedures are set forth in the CBA, final employment decisions with respect to LaGuardia faculty members rests exclusively with the City University of New York Board of Trustees. See, e.g., Defendant's Exhibit M (August 2001 letter recommending McKie's appointment); Defendant's Exhibit Z (February 2003 letter recommending that McKie not be reappointed). Thus, Plaintiff has not, and cannot, establish any facts to support municipal liability under Monell. See Birmingham, 70 F. Supp. 2d at 373. As such, Plaintiff cannot sustain her claim for discrimination under Section 1981.

## State Claims

Having concluded that McKie's Section 1981 claim must be dismissed, we decline to exercise supplemental jurisdiction over her remaining claims under the New York State Human

Rights Law and the New York City Human Rights Law. See 28 U.S.C. § 1367(c)(3); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 55-57 (2d Cir. 2004); Murray v. Visiting Nurse Svcs. of N.Y., 528 F. Supp. 2d 257, 280-81 (S.D.N.Y. 2007) (collecting cases).

## CONCLUSION

For the reasons set forth above, LaGuardia's motion for summary judgment is GRANTED. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. As such, this matter is DISMISSED, and the Clerk of Court is directed to close the file.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2008

ROSLYNN R. MAUSKOPF
United States District Judge